IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PACIFIC OIL & GAS, LLC, ET AL.,

    Plaintiffs,

v.

CHESAPEAKE ENERGY CORP., ET AL.,

    Defendants.

Case No. 16-CV-2498-JAR

## MEMORANDUM AND ORDER

Plaintiffs Pacific Oil and Gas, LLC, Oil and Gas Technology, William Gumma, Conover H. Able III, Bill Pearson, Jonathan S. Wimbish, Charles G. Clark, Ronald J. Lincoln, John Horne, Clarence Cottman, Erin R. Cottman, Claire C. Keneally, John S. Keneally, Ian M. Keneally, Susan C. Connell, and Edwin C. Brown all individually and derivatively on behalf of Chisholm Partners, LLC filed this action alleging that Defendants Chesapeake Energy Corp., Chesapeake Exploration, LLC, Tom L. Ward, and John Does 1-50 conspired, in the course of acquiring mineral leases, to keep the prices for such leases artificially low by agreeing not to compete against each other during acquisition in violation of the Sherman Antitrust Act.[1] Defendants filed a Motion to Transfer Venue (Doc. 27) to the United States District Court for the Western District of Oklahoma. The principal ground for assertion that transfer is warranted is the existence of a pending lawsuit, *In re: Anadarko Basin Oil & Gas Lease Antitrust Litigation* ("*Anadarko Basin Litigation*").[2] That suit is a consolidated proceeding of twelve cases pending before the Western District of Oklahoma alleging similar, if not identical, issues. This matter is

---

[1] 15 U.S.C. §§ 1, 3.

[2] No. 16-209 (W.D. Okla).

fully briefed, and the Court is prepared to rule. For the reasoning described more fully below, the Court grants Defendants' motion to transfer to the Western District of Oklahoma.

I.      **Factual and Procedural Background**

This matter has a convoluted factual background, so for purposes of brevity, the Court will briefly summarize the allegations of this suit as it relates to the pending motion to transfer. Defendant Chesapeake Energy Corporation ("Chesapeake Energy") is a corporation organized under Oklahoma law with its principal place of business in Oklahoma. Defendant Chesapeake Exploration, LLC ("Chesapeake Exploration") is a limited liability company organized under Oklahoma law with its principal place of business in Oklahoma. Throughout this Order, for purposes of clarity, Defendants Chesapeake Energy and Chesapeake Explorations will be referred to collectively as Chesapeake. Defendant Tom Ward, an Oklahoma resident, is the former SandRidge Energy Corporation ("SandRidge") chief executive officer. SandRidge, prior to bankruptcy, was a corporation formed under the laws of Delaware with its principal place of business in Oklahoma.

Plaintiffs claim Defendants colluded to rig the market for oil and gas leaseholds by agreeing to not compete against each other in acquiring the leaseholds. The Complaint in this matter alleges that Chisholm Partners, LLC ("Chisholm"), a limited liability corporation formed under Louisiana law, owned mineral leases covering 7,300 acres in Harper and Sumner County, Kansas and approximately 21,320 acres in Kingman County, Kansas.[3] Chisholm sold these leaseholds to Defendant Chesapeake Explorations after SandRidge suddenly withdrew from bidding. Plaintiffs, who are members or successors in interest to former members of Chisholm, claim damages based on selling their leasehold interest in Kansas for below market value as a

---
[3] This land is considered part of the Anadarko Basin Region, which the Complaint alleges is located in northwest Oklahoma, north Texas, southeast Colorado, and Kansas. Doc. 1 at 7.

2

result of the alleged conspiracy in violation of Sections 1 and 3 of the Sherman Antitrust Act. This lawsuit came following the indictment of Aubrey McClendon, the former Chesapeake Energy chief executive officer, in March 2016 for conspiracy to rig bids with an unnamed company, which was presumed to be SandRidge.[4]

The matter before this Court was not the only lawsuit filed following McClendon's indictment. Twelve suits were filed in the Western District of Oklahoma alleging that Chesapeake and SandRidge conspired to rig bidding during their acquisition of mineral leases in the Anadarko Basin region in violation of the Sherman Act. These suits were consolidated on April 15, 2016 in the *Anadarko Basin Litigation* before United States District Court Judge Vicki Miles-LaGrange.[5] SandRidge filed bankruptcy following the consolidation, so Judge Miles-LaGrange administratively closed the *Anadarko Basin Litigation* on May 20, 2016.[6] The administrative closing gave the plaintiffs the right to re-open the *Anadarko Basin Litigation* within thirty days of the termination of the bankruptcy proceeding.[7]

After the administrative closing of the *Anadarko Basin Litigation* in the Western District of Oklahoma, this matter was filed on July 13, 2016. The motion to transfer to the Western District of Oklahoma was filed on September 27, 2016. The parties apprised the Court through notices pursuant to D. Kan. Rule 7.1(f) in December 2016 that the *Anadarko Basin Litigation* was not yet re-opened, but likely would be re-opened following settlement of the bankruptcy

---

[4] Doc. 28-1. *United States v. McClendon*, No. 16-043 (W.D. Okla. Mar. 1, 2016). The indictment was dismissed after McClendon died in a single-vehicle car crash on March 2, 2016.

[5] Doc. 28-3. *In re: Anadarko Basin Oil & Gas Lease Antitrust Litig.*, No. 16-209 (W.D. Okla. Apr. 15, 2016), Doc. 38. It has subsequently been transferred to United States District Court for the Western District of Oklahoma Chief Judge Joe Heaton.

[6] Doc. 28-4. *Anadarko Basin Litig.*, No. 16-209 (W.D. Okla. May 20, 2016), Doc. 105.

[7] *Id.*

matter involving SandRidge.[8] On January 31, 2017, the Court ordered the parties to file a status report by March 1, 2017 apprising the Court of whether the Western District of Oklahoma had ruled on the motion to re-open the *Anadarko Basin Litigation*.[9] The parties submitted a joint status report notifying the Court that on February 24, 2017, the bankruptcy proceedings had resolved as to SandRidge and the *Anadarko Basin Litigation* parties were planning to move the Western District of Oklahoma to re-open the *Anadarko Basin Litigation* at a March 21, 2017 status conference.[10] The Court again requested an updated status report following the March 21 status conference.[11] The parties submitted a joint status report stating that the Western District of Oklahoma re-opened the *Anadarko Basin Litigation* and entered an order designating co-lead counsel for the plaintiffs in that matter.[12]

## II. Legal Standard

Defendants move to transfer this case to the Western District of Oklahoma under 28 U.S.C. § 1404. Under § 1404(a), the Court may transfer a case to any district where it might have been brought "for the convenience of the parties and witnesses" and "in the interest of justice." The parties do not dispute that this matter could have been brought in the Western District of Oklahoma.[13] In determining whether to grant a motion to transfer, this Court considers the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and

---

[8] Docs. 34, 35, 36.

[9] Doc. 37.

[10] Doc. 38.

[11] Doc. 39.

[12] Doc. 40.

[13] *See* 28 U.S.C. § 1400(a). *See* Doc. 28 at 9; Doc. 32 at 3.

4

obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[14]

"Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."[15] The burden of proving that the existing forum is inconvenient lies with the moving party.[16]

### III. Discussion

Defendants argue that this matter is properly transferred to the Western District of Oklahoma given the pendency of the *Anadarko Basin Litigation* with nearly identical facts and underlying legal issues. Plaintiffs essentially concede that this case and the *Anadarko Basin Litigation* may be consolidated for purposes of discovery.[17] The question of transfer, therefore, is only a question of the proper location for trial. Thus, the Court proceeds to analyze the factors governing transfer with the question of trial location as a particular focus.

### A. Plaintiffs' Choice of Forum

Although a plaintiff's forum choice "should rarely be disturbed,"[18] the plaintiff's choice of forum receives little deference when, as here, the plaintiff does not reside there.[19] Plaintiff's choice of forum is also accorded little weight "where the facts giving rise to the lawsuit have no

---

[14] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

[15] *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).

[16] *Id.* at 965 (citing *Chrysler Credit Corp.*, 928 F.2d at 1515).

[17] Doc. 32 at 8.

[18] *Id.*

[19] *Menefee v. Zepick*, No. 09-2127-JWL, 2009 WL 1313236, at *1 (D. Kan. May 12, 2009); *Benson v. Hawker Beechcraft Corp.*, No. 07-2171-JWL, 2007 WL 1834010, at *2 (D. Kan. June 26, 2007).

material relation or significant connection to the plaintiff's chosen forum."[20] Defendants argue that Plaintiffs' choice of forum should not receive deference because Plaintiffs do not reside in Kansas and the underlying events occurred outside of Kansas. The Court finds Plaintiffs do not reside in Kansas,[21] so their choice of forum is afforded less weight.[22] Thus, Plaintiffs' argument on this factor rests solely on their assertion that "there is a significant connection between the facts of the present lawsuit and Kansas as the forum."[23]

In the briefing for this motion, Plaintiffs allege only one significant connection with Kansas, the mineral lease land at issue is located in Kansas. Plaintiffs allege in the Complaint that Chesapeake and SandRidge were actively discovering and drilling in Kansas during the relevant time period, but Plaintiffs do not allege in the briefing that this creates a significant connection to Kansas in proving the underlying conspiracy.[24] Defendants argue that the transaction was materially connected to states other than Kansas, including Oklahoma and Louisiana.

---

[20] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).

[21] Plaintiffs did not allege their residency in the Complaint. Defendants submitted a document showing Pacific Oil and Gas, LLC as a California resident, Edwin Brown as a California resident, Conover Able as a Texas resident, Bill Pearson as a Colorado resident, Jonathan Winbish as a California resident, Charles Clark as a Missouri resident, Ronald Lincoln as a California resident, John Horne as a Colorado resident, Erin Cottman as a Colorado resident, Clarence Cottman as unknown, Claire Keneally as a California resident, John Keneally as a California resident, Ian Keneally as a California resident, Susan Connell as unknown, Oil & Gas Technology as unknown, and William Gumma as unknown. Doc. 28-6.

[22] *See* Doc. 32 at 4. Plaintiffs argue that while they do not reside in Kansas, a number of Plaintiffs own property and spend considerable time in Kansas. Plaintiffs do not cite nor is the Court aware of law considering time and property ownership in the forum as equivalent to residency for purpose of a motion to transfer. In fact, this Court has previously rejected such arguments. *Mortg. Research Ctr., LLC v. Flagship Fin. Grp., LLC*, No. 16-2253, 2016 WL 7229259, at *3 (D. Kan. Dec. 14, 2016) (considering the fact that the plaintiff had a large office in Kansas as deserving of little deference under the factor for plaintiff's choice of forum in considering a motion to transfer). Further, even if this Court were to consider Plaintiffs' ties to Kansas based on facts other than residency, the Court would be unpersuaded given that only Plaintiff William Gumma is alleged to have set foot in Kansas. Doc. 32-8. Most of Plaintiffs' connections to Kansas are as beneficiaries of trusts that own land in Kansas.

[23] Doc. 32 at 5.

[24] Doc. 1 at ¶¶ 28–32.

To state a claim under § 1 of the Sherman Act, a plaintiff must plead a contract, combination, or conspiracy among two or more independent actors; that unreasonably restrains trade; and is in, or substantially affects, interstate commerce.[25] To state a claim under § 3 of the Sherman Act, a plaintiff must plead a "contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or of the District of Columbia."[26] Many of the key facts necessary to prove these claims will relate to the existence of the conspiracy, which allegedly took place in Oklahoma as SandRidge and Chesapeake are Oklahoma businesses. The key executive managers and employees involved are alleged to have worked almost exclusively in Oklahoma. The criminal indictment of Aubrey McClendon, which served as the catalyst for this litigation, took place in Oklahoma. Similarly, Defendants allege that the negotiations of this deal took place in Oklahoma, which Plaintiffs seemingly do not contest nor does the Complaint belie. Chisholm, the business to which Plaintiffs are successors, was a Louisiana company. Thus, a number of the material facts have significant connections to states other than Kansas.

One of the key issues will be the difference in leasehold price between the sale of the land at issue and the sale of Kansas land in a competitive market, a key fact centered in Kansas. However, the Court is equally mindful that Plaintiffs' Complaint alleges that the land involved in the overarching conspiracy spans the entire Anadarko Basin region, which includes Kansas, Oklahoma, Texas, and Colorado.[27] While the land in this lawsuit is only in Kansas, it seems likely that evidence of the price difference of the land Chesapeake and SandRidge purchased in

---

[25] *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1306 (10th Cir. 2017).

[26] 15 U.S.C. § 3.

[27] Doc. 1 ¶ 34 ("[T]he Defendants and Sandridge, between them, illegally "divided up" the geographic area covering the Anadarko Basin Region in Kansas, and other states, and agreed not to compete and drive up prices for leasehold interests in each other's assigned area."); Doc. 1 ¶ 25 (referring to the market value of leasehold interests covering the Anadarko Basin).

other states and the sales price of those leaseholds compared to market value will also be central to establishing the alleged conspiracy.

To summarize, the Court finds that the facts giving rise to the Sherman Antitrust violation "have [a] material relation or significant connection" to Kansas. The leasehold land at issue is in Kansas, so this is a material fact that will ultimately be important when assessing the price of the land sold in this transaction as compared to other similarly situated Kansas leasehold lands in the competitive market. However, the Court also finds that the fact that the land at issue is in Kansas is somewhat neutralized given that the conspiracy alleged in the Complaint itself took place in Oklahoma and spanned the entire Anadarko Basin region, so this is not unique to Kansas. The Court therefore finds that both Oklahoma and Kansas have nearly equivalent connections to the operative facts.[28] Thus, because at least one operative fact for this litigation has a significant connection to Kansas, the choice of Kansas is entitled to some deference. This weighs against transfer.

**B.     Accessibility of Witnesses and Other Sources of Proof**

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."[29] Defendants argue that there are no witnesses or evidence in Kansas, except for the existence of the land in Kansas. But to demonstrate inconvenience under this factor, Defendant must: "(1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of their testimony'; and (3) 'show that any such witnesses were unwilling to come to trial, . . . that

---

[28] *Mortg. Research. Ctr., LLC v. Flagship Fin. Grp., LLC*, No. 16-2253, 2016 WL 7229259, at *3 (D. Kan. Dec. 14, 2016) (quoting *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16 (S.D.N.Y. 2012)).

[29] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (quoting *Cook v. Atchison , Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.'"[30]

Defendants offered the affidavit of Fred Gipson, the lead counsel for Chesapeake and its subsidiaries.[31] Mr. Gipson's affidavit identified the individuals involved in the transaction at issue in this lawsuit. Chesapeake no longer employs any of these individuals. Those individuals, their location, and their testimony are as follows:

- David Smith, who is living in Oklahoma City, was involved in the initial negotiations;
- Tom Flesher, who is living in Oklahoma City, handled due diligence and closing the transaction;
- Robert Portman, who is living in Oklahoma City, was the land manager for the Kansas region and was familiar with the competitive conditions in Kansas;
- James Beaver, who is living in Oklahoma City, participated in the geological analysis of the land;
- Brian Exline, who is living in Oklahoma City, approved and executed the closing documents;
- George Denny, who is living in Oklahoma City, was involved in the transaction;
- Doug Jacobson, who is living in the Oklahoma City area, was a senior manager involved in the transaction; and
- Todd Stephenson, who is living in the Oklahoma City area, was involved in the approval process for the transaction.

Defendants also asserted Defendant Tom Ward is an Oklahoma resident and SandRidge was headquartered in Oklahoma, so it is likely that many of the witnesses involved with the transaction from SandRidge will be located in Oklahoma.

Plaintiffs counter that it is uncertain at this point that these witnesses would be required to testify at trial because it is unknown whether they have knowledge related to the conspiracy. Plaintiffs further offer that at this stage in the litigation it is impossible to know whether the listed individuals would refuse to appear and nothing would preclude offering their testimony

---

[30]*Id.* (quoting *Scheidt*, 956 F.2d at 966) (internal alterations omitted).

[31] Doc. 28-7.

9

through deposition. Notably absent from Plaintiffs' response is identification of any key witnesses who are located in Kansas and unwilling to travel to Oklahoma to testify.

The Court finds that the key issue at trial will be establishing the existence of a conspiracy between Chesapeake and SandRidge to rig bidding for leaseholds and depress the price for such leaseholds. Although the leaseholds involved in the conspiracy spanned the entire Anadarko Basin, the alleged conspiracy took place in Oklahoma where both companies were organized and headquartered. The executives who would have been involved in the conspiracy are presumably all located in Oklahoma. As Defendants have provided through Mr. Gispon's affidavit, the employees involved in this transaction are all located in Oklahoma. These witnesses live more than 100 miles away from Kansas City, so they would not be subject to this Court's subpoena power.[32] And there is no evidence that they would be unwilling to voluntarily travel to Kansas. Nonetheless, the Court is persuaded that deposition testimony of these witnesses may not be satisfactory given the significance and materiality of their potential testimony in this case.

Plaintiffs cite *Wiston XXV Limited Partnership v. Brophy, Gestal, Knight & Co.*[33] for the proposition that the Court must deny transfer where the moving party has not made a showing that the non-party witnesses may refuse to travel for trial. The Court finds this case does not stand for such a proposition and is distinguishable. In *Wiston*, the plaintiff was a Kansas limited partnership with general partners who were both Kansas residents, and the defendants moved to transfer the case to the Southern District of New York.[34] The court considered the fact that the

---

[32] Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."). By contrast, should the trial be located in Oklahoma City, the non-party witnesses would be subject to compulsory process under Fed. R. Civ. P. 45.

[33] No. 90-2145, 1991 WL 33611 (D. Kan. 1991).

[34] *Id.* at *1.

defendant offered four witnesses outside of the subpoena power of the court, while the plaintiff had one key witness who was outside the subpoena power of the New York court.[35] The Court denied transfer because it reasoned "[t]ransfer based on convenience of witnesses is only warranted if the inconvenience of the defendants' witnesses far outweighs that which plaintiff's witnesses will experience upon transfer."[36]

Here, the Court has already found that Plaintiffs are not Kansas residents, and that Defendants are Oklahoma residents. Defendants have provided a list of non-party witnesses who have important testimony related to the transaction at issue. Many are top executives who presumably were involved with this transaction and other similar acquisitions, so the Court finds they will likely have material testimony. These witnesses are all living in the Oklahoma City area, which is outside this Court's subpoena power. These witnesses would be free to refuse to testify. Plaintiff has not offered a single key witness located in Kansas nor a single key non-party witness who would refuse to testify should this case be transferred to Oklahoma. Thus, using the reasoning employed in *Wiston*, the Court finds that transfer is warranted because the convenience of Defendants' witnesses clearly outweighs that of Plaintiffs' witnesses, given that no showing has been made that any reside in Kansas or would refuse to testify in Oklahoma. Defendants have satisfied their burden in demonstrating inconvenience to witnesses whereas Plaintiffs have not countered with any similar evidence.

The convenience factor weighs in favor of transfer given the specific witnesses identified by Defendants, the uncertainty about the non-party witness' willingness to travel to Kansas for trial, the unsatisfactory nature of using their deposition testimony at trial, and the lack of

---

[35] *Id.* at *2.

[36] *Id.*

evidence that any material witness to this dispute is located in Kansas or unwilling to travel to Oklahoma for trial.

C.      **Cost of Making Necessary Proofs**

Defendants argue that all or nearly all of the witnesses are within a short driving distance of Oklahoma City, where the courthouse for the Western District of Oklahoma is located, as opposed to 350 miles away from Kansas City. Defendants argue trial would be more expensive in Kansas City because nearly all of these witnesses would need to travel a significant distance. While the Court could not discern Plaintiffs' response, Plaintiffs generally argue that there is a great connection between Kansas and the facts at issue. As the Court explained above, the only connection to Kansas is the underlying leaseholds. Plaintiffs do not allege the witnesses are located in Kansas, the evidence is located in Kansas, or any other facts relating to Kansas. Again, Defendants have met their burden to establish many of the witnesses would need to travel to attend trial in Kansas whereas Plaintiffs have not countered with any evidence. Thus, the Court finds that this factor weighs in favor of transfer.

D.      **Difficulties that May Arise from Congested Dockets**

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[37] The most recent statistics from a twelve-month period ending in December 2016 reflect that the median time from filing to disposition of civil cases in the District of Kansas is 7.6 months; the Western District of Oklahoma is 8.7 months.[38] In Kansas, the median time from filing to trial is 22.7 months; while

---

[37]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).

[38] *See* Federal Court Management Statistics, Comparison Within Circuit, available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/12/31-3 (Dec. 31, 2016).

the Western District of Oklahoma is 34.2 months. In Kansas, there are 629 pending cases and 375 weighted filings per judge. In the Western District of Oklahoma, there are 253 pending cases and 283 weighted filings per judge. Although Western Oklahoma has a slightly longer median time from filing to disposition and from filing to trial, it has substantially less pending cases and weighted filings per judge. The Court does not find these differences are significant in the transfer analysis.

E.      **Efficient Administration of Justice**

The Court finds this factor particularly important to the § 1404(a) analysis given the *Anadarko Basin Litigation*, which almost exactly mirrors the litigation at issue here. In Defendants' briefing on this motion, Defendants compare the Complaint in this matter[39] and the initial Complaint for the first plaintiff in the *Anadarko Basin Litigation*.[40] Both of the Complaints track closely, sometimes even word for word.[41] Defendants' conduct at issue appears to be identical in both cases, including timing of the conduct. The only real difference in the allegations that the Court can discern is the plaintiffs involved and the land on which the underlying leaseholds sit, although Plaintiffs' land falls within the Anadarko Basin region.

Plaintiffs argue that if this case is transferred to the Western District of Oklahoma, it will become part of the pending consolidated *Anadarko Basin Litigation*. Plaintiffs distinguish this case from the *Anadarko Basin Litigation* because this case involves Kansas land and is not a putative class action. Plaintiffs object to filing a consolidated complaint in the *Anadarko Basin Litigation*. Plaintiffs also object to losing their counsel to the lead counsel appointed in the

---

[39] Doc. 1.

[40] Doc. 28-2.

[41] *Compare* Doc. 28-2 ¶¶ 13 – 23 (describing the structure of the leasehold market and indictment of Aubrey McClendon in the *Anadarko Basin Litigation* initial complaint) *with* Doc. 1 ¶¶ 14–18, 35–38 (describing the structure of the leasehold market and indictment of Aubrey McClendon).

13

*Anadarko Basin Litigation*. However, Plaintiffs ultimately concede that for purposes of efficiency, the matters may be consolidated for purposes of discovery.

The pendency of related litigation in another forum is a proper factor to consider in resolving choice of venue questions.[42] Twelve federal actions pending and consolidated in the Western District of Oklahoma allege nearly identical factual and legal issues. Ultimately, these cases, including the matter before this Court, turn on whether there was a bid rigging conspiracy between SandRidge and Chesapeake during acquisition of oil and gas leaseholds in the Anadarko Basin region. The evidence and witnesses presented will likely heavily overlap. Ultimately, whether or not this case is consolidated in the *Anadarko Basin Litigation*, it does not serve the efficient administration of justice to have these claims considered in two separate district courts.

The Court also finds Plaintiffs' attempt to distinguish this case from the *Anadarko Basin Litigation* unavailing. First, the *Anadarko Basin Litigation* does involve land in Kansas.[43] Even if no current plaintiffs have land in Kansas, the original complaint concerns the entire Anadarko Basin region, which includes Sumner, Harper, and Kingman Counties in Kansas.[44] Second, the fact that this case is not meant to be a class action is properly considered by the transferee court. The Court is not aware nor have the parties alleged that the *Anadarko Basin Litigation* has been certified as a class action, so this is not a consideration ripe at this point. Further, Plaintiffs do not address whether they could opt out from the potential class action.[45] This Court declines the

---

[42] *Schecher v. Purdue Pharma LP*, 317 F. Supp. 2d 1253, 1261 (D. Kan. 2004).

[43] Further, Plaintiffs do not elaborate why it is relevant that their case involves *only* Kansas land, and given the elements of the underlying Sherman Act claim, the Court cannot discern why this would affect the outcome of the litigation.

[44] Doc. 28-2 at 6 n.3 (defining Anadarko Basin region to include such counties).

[45] The original complaint filed in the Anadarko Basin Litigation asserts a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Doc. 28-2 ¶ 24.

invitation to consider the effect of the class action certification as it is merely speculative at this point.

The Court is also not persuaded that the fact that Plaintiffs do not want to join the consolidated proceeding is a consideration that carries weight in this analysis. Yet again, Plaintiffs fail to cite law that this Court should ignore the pending consolidated proceeding — considering nearly identical cases— in favor of Plaintiffs' concerns regarding a consolidated complaint and appointed counsel. Again, this Court finds that the transferee court is better positioned to consider Plaintiffs' concerns regarding consolidation. Plaintiffs may assert the right to counsel and its own complaint when and if this matter becomes consolidated.

In conclusion, because of the similarities in this action and the *Anadarko Basin Litigation*, transfer to the Western District of Oklahoma is warranted to facilitate the interest of justice and avoid inconsistent results. If this Court were to refuse to transfer, two district courts would be simultaneously litigating nearly identical factual and legal issues involving identical defendants, which is neither efficient nor convenient to the parties. Given that Plaintiffs agree this may be consolidated with the *Anadarko Basin Litigation* for purposes of discovery, the Court is only further persuaded that transfer is proper for purposes of the efficiency of the proceeding. This factor weighs in favor of transfer.

F.     **Relative Advantages and Obstacles to a Fair Trial**

Plaintiffs spend a significant amount of the briefing addressing a concern that transfer will be prejudicial because Defendants are well known and respected in Oklahoma City. For example, Plaintiffs offer that Chesapeake's headquarters are in Oklahoma City, Defendant Tom Ward and SandRidge are both located in Oklahoma City, Aubrey McClendon and Defendant Tom Ward are part of the group that brought National Basketball Association team the

15

Oklahoma City Thunder to Oklahoma City, and the media praised Aubrey McClendon following his death. Plaintiffs argue that the jury pool will be biased in favor of Defendants, and Kansas will offer a more neutral jury pool than Oklahoma. Defendants counter that many plaintiffs have sued Defendants in the Western District of Oklahoma and are satisfied that they may achieve a fair trial, so a fair and impartial trial is possible against Defendants.

This Court has previously rejected contentions that a fair trial is not possible in the city in which the defendant corporations are headquartered.[46] In *Aramburu v. Boeing Co.*, the Court considered whether a fair trial was possible in Wichita, Kansas against Boeing, which is headquartered in Wichita, actively involved in the Wichita community, and employs a large number of Wichita residents.[47] The Court rejected the argument that a fair trial was not possible as it was a speculative argument and could be addressed through voir dire.[48]

Similar to *Aramburu*, the Court acknowledges that Defendants are headquartered or important figures in Oklahoma City. However, the Court agrees with the reasoning in *Aramburu*. The argument that Oklahoma City residents will be unwilling to hold against Defendants is at most speculative. The Court is confident that Plaintiffs' concerns that Oklahoma City residents may be biased in favor of Defendants will be adequately addressed through voir dire of the prospective witnesses.[49]

Further, the Court disagrees with Plaintiffs' position that the media has irreversibly biased the jury pool in favor of Defendants. The allegedly sterling reputation that Defendant Chesapeake and SandRidge, along with their executives, have enjoyed has undoubtedly been

---

[46] *Aramburu v. Boeing Co.*, 896 F. Supp. 1063, 1064 (D. Kan. 1995). *See also Dawson v. Spirit Aerosystems, Inc.*, Nos. 08-2494, 08-2495, 2009 WL 215349, at * 3 (D. Kan. Jan. 29, 2009) (refusing to transfer based on alleged jury bias in favor of defendant Spirit Aerosystems, which was a large employer in Wichita).

[47] *Id.* at 1065.

[48] *Id.*

[49] *Callahan v. Bledsoe*, No. 16-2310, 2017 WL 1303269, at *5 (D. Kan. Apr. 6, 2017).

16

tainted following Aubrey McClendon's indictment for these exact allegations. While Plaintiffs offer numerous positive media portrayals of Defendants, the Court has no doubt there was a large amount of media coverage following Aubrey McClendon's criminal indictment. The Court is simply not persuaded that the jury pool in Oklahoma has been irreversibly tainted in favor of Defendants, especially given the criminal indictment that spurred this litigation, such that a fair trial would be impossible.

Also, as Defendants correctly point out, the jury pool is not only Oklahoma City residents. The jury pool for the Western District of Oklahoma is drawn from 40,000 people.[50] These names are drawn from eleven counties, which include cities like Guthrie, Chickasha, Pauls Valley, and Shawnee. Thus, the jury pool will include jurors from cities other than Oklahoma City. The Court is also persuaded that the Western District of Oklahoma has tried cases in Oklahoma City involving Chesapeake as a litigant, and fair and impartial juries have been impaneled.[51]

Ultimately, the Court finds this factor neutral because either Kansas or Oklahoma will provide a fair trial to the parties.

## G. Remaining Factors

The remaining factors are either irrelevant or neutral. This case is brought under the Sherman Act, which is federal law. Given this is federal law, there is no question about the enforceability of the judgment or the ability of a federal judge to apply federal law in Oklahoma. Likewise, there are no anticipated issues of conflicts of laws. Defendants do not offer other considerations that weigh in favor of transfer.

---

[50] Doc. 33-1.

[51] *See, e.g.*, *Chesapeake Energy Corp. v. TXD Servs. LLP*, No. 07-CV-00318, 2008 WL 2388423 (W.D. Okla. May 14, 2008) (awarding $11 million verdict following jury trial to counterclaimant TXD Services for breach of oil drilling contract).

### H. Conclusion

The Court finds that Defendants have met the heavy burden of showing that the factors weigh strongly in favor of a transfer to the Western District of Oklahoma. Indeed, the present action reflects a classic example of a case that ought to be transferred. Plaintiffs are not residents of the chosen forum, so the Court does not give weight to this consideration as it normally would. While the underlying leaseholds are situated on land in Kansas, Plaintiffs allege this is the only significant connection to Kansas. The Court does give some weight to this factor for denying transfer. However, every other factor weighs heavily in favor of transfer or is neutral. The witnesses to prove or disprove the claims are in Oklahoma, so the convenience to the witnesses and cost of making necessary proof weigh heavily in favor of transfer. The matter pending before the Western District of Oklahoma, the *Anadarko Basin Litigation*, is nearly identical to this case, so this will assist in the efficient administration of justice. Where Defendants have met their hefty burden to produce evidence in favor of transfer, Plaintiffs have done little rebut most of Defendants' contentions. Thus, this case is properly transferred.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Transfer Venue (Doc. 27) is **granted**. This matter is transferred to the United States District Court for the Western District of Oklahoma for further proceedings.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants' Motion for a Hearing on the Motion to Transfer (Doc. 29) is **denied** as this matter was considered on the briefing without need for argument.

**IT IS SO ORDERED.**

Dated: April 18, 2017

                                             S/ Julie A. Robinson
                                             JULIE A. ROBINSON
                                             UNITED STATES DISTRICT JUDGE